PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

LLOYD K. GARRISON (1946-1991)
RANDOLPH E. PAUL (1946-1956)
SIMON H. RIFKIND (1950-1995)
LOUIS S. WEISS (1927-1950)
JOHN F. WHARTON (1927-1977)

WRITER'S DIRECT DIAL NUMBER
212-373-3505

WRITER'S DIRECT FACSIMILE
212-492-0505

WRITER'S DIRECT E-MAIL ADDRESS
esacksteder@paulweiss.com

UNIT 3601, OFFICE TOWER A, BEIJING FORTUNE PLAZA
NO. 7 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K.
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

MATTHEW W. ABBOTT
EDWARD T. ACKERMAN
JACOB A. ADLERSTEIN
ALLAN J. ARFFA
ROBERT A. ATKINS
DAVID J. BALL
SCOTT A. BARSHAY
PAUL M. BASTA
JOHN F. BAUGHMAN
J. STEVEN BAUGHMAN
LYNN B. BAYARD
CRAIG A. BENSON
MITCHELL L. BERG
MARK S. BERGMAN
DAVID M. BERNICK
JOSEPH J. BIAL
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
ANGELO BONVINO
DAVID W. BROWN
SUSANNA M. BUERGEL
PATRICK S. CAMPBELL*
JESSICA S. CAREY
JEANETTE K. CHAN
GEOFFREY R. CHEPIGA
ELLEN N. CHING
WILLIAM A. CLAREMAN
LEWIS R. CLAYTON
YAHONNES CLEARY
JAY COHEN
KELLEY A. CORNISH
CHRISTOPHER J. CUMMINGS
THOMAS V. DE LA BASTIDE III
ARIEL J. DECKELBAUM
ALICE BELISLE EATON
ANDREW J. EHRLICH
GREGORY A. EZRING
LESLIE GORDON FAGEN
ROSS A. FIELDSTON
BRAD J. FINKELSTEIN
BRIAN P. FINNEGAN
ROBERTO FINZI
PETER E. FISCH
ROBERT C. FLEDER
MARTIN FLUMENBAUM
ANDREW J. FOLEY
ANDREW J. FORMAN*
HARRIS B. FREIDUS
MANUEL S. FREY
ANDREW L. GAINES
KENNETH A. GALLO
MICHAEL E. GERTZMAN
ADAM M. GIVERTZ
SALVATORE GOGLIORMELLA
NEIL GOLDMAN
ROBERTO J. GONZALEZ*
CATHERINE L. GOODALL
ERIC GOODISON
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
BRIAN S. GRIEVE
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A. GUTENPLAN
ALAN S. HALPERIN
JUSTIN G. HAMILL
CLAUDIA HAMMERMAN
BRIAN S. HERMANN
MICHELE HIRSHMAN
MICHAEL S. HONG
DAVID S. HUNTINGTON
AMRAN HUSSEIN
LORETTA A. IPPOLITO
JAREN JANGHORBANI
BRIAN M. JANSON
JEH C. JOHNSON

MEREDITH J. KANE
JONATHAN S. KANTER
BRAD S. KARP
PATRICK N. KARSNITZ
JOHN C. KENNEDY
BRIAN KIM
KYLE J. KIMPLER
DAVID M. KLEIN
ALAN W. KORNBERG
DANIEL J. KRAMER
DAVID K. LAKHDHIR
STEPHEN P. LAMB*
JOHN E. LANGE
GREGORY F. LAUFER
BRIAN C. LAVIN
XIAOYU GREG LIU
JEFFREY D. MARELL
MARCO V. MASOTTI
EDWIN S. MAYNARD
DAVID W. MAYO
ELIZABETH R. McCOLM
ALVARO MEMBRILLERA
MARK F. MENDELSOHN
CLAUDINE MEREDITH-GOUJON
WILLIAM B. MICHAEL
JUDIE NG SHORTELL*
CATHERINE NYARADY
JANE B. O'BRIEN
ALEX YOUNG K. OH
BRAD R. OKUN
KELLEY D. PARKER
LINDSAY B. PARKS
VALERIE E. RADWANER
CARL L. REISNER
LORIN L. REISNER
WALTER G. RICCIARDI
WALTER RIEMAN
RICHARD A. ROSEN
ANDREW N. ROSENBERG
JACQUELINE P. RUBIN
CHARLES F. "RICK" RULE*
RAPHAEL M. RUSSO
ELIZABETH M. SACKSTEDER
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
DALE M. SARRO
TERRY E. SCHIMEK
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JOHN M. SCOTT
DAVID R. SICULAR
MOSES SILVERMAN
AUDRA J. SOLOWAY
SCOTT M. SONTAG
TARUN M. STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
RICHARD C. TARLOWE
MONICA K. THURMOND
DANIEL J. TOAL
LIZA M. VELAZQUEZ
RAMY J. WAHBEH
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
MARK B. WLAZLO
JULIA MASON WOOD
JENNIFER H. WU
BETTY YAP*
JORDAN E. YARETT
KAYE N. YOSHINO
TONG YU
TRACEY A. ZACCONE
TAURIE M. ZEITZER
T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR

March 14, 2018

**Via ECF**

The Honorable James L. Cott
United States Magistrate Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York  10007-1312

Re: *In re: The Bank of New York Mellon ADR FX Litig.*, 1:16-cv-00212-JPO-JLC

Dear Judge Cott:

This firm represents Defendant The Bank of New York Mellon ("BNYM" or the "Bank") in this action. We write in response to Plaintiffs' March 7, 2018 letter requesting a pre-motion conference concerning Plaintiffs' contemplated motion to compel the Bank to produce documents in response to Plaintiffs' Fourth Set of Requests for Production of Documents (the "Fourth Request"), dated January 26, 2018, seeking email correspondence from 1996. As noted in Plaintiffs' March 7 letter, BNYM objects to Plaintiffs' untimely and inappropriate request.


Hon. James L. Cott 2

I. **Background to This Dispute**

Discovery has been proceeding in this action since Judge Oetken's ruling on the Bank's motion to dismiss in September 2016. In that time, the Bank has produced more than 600,000 documents, exceeding 2,700,000 pages. The majority of those documents were produced by May 2017. The rest were produced by the Bank on a rolling basis between June 2017 and December 15, 2017—the date this Court previously identified as the "outside date for a final production of documents or otherwise bringing any disputes to the Court's attention" pertaining to document discovery (Dkt. No. 73 at 25)—but for a few produced later to accommodate Plaintiffs' requests to update or supplement certain data. Depositions commenced in October 2017, and fact discovery concludes on April 30, 2018. Expert discovery will commence this month, when Plaintiffs serve their expert reports in support of class certification on March 16, 2018. BNYM's responsive expert reports on class certification are due on April 16, 2018.

Plaintiffs served their First Set of Requests for Production of Documents on February 8, 2016. BNYM filed a motion to dismiss on February 26, 2016, and Judge Oetken stayed discovery while the motion was pending. (Dkt. No. 31.) After Judge Oetken granted the motion in part and denied it in part on September 29, 2016 (Dkt. No. 36), Plaintiffs served their Second Set of Requests for Production of Documents on January 6, 2017. Following motion practice before this Court, the Bank substantially completed its production by June 2017, producing over 400,000 documents—almost two million pages—from 59 custodians; those documents included the document attached to Plaintiffs' March 7, 2018 letter as Exhibit A.

On October 11, 2017, Plaintiffs served a Third Set of Requests for Production of Documents, requesting a discrete set of data, and the Bank had produced documents responsive to that request by December 15, 2017, the deadline set by the Court, to which Plaintiffs had agreed. (Dkt. No. 73 at 25-26.)

Plaintiffs began noticing depositions in August 2017, but a dispute arose relating to the coordination of those depositions in this action with those in a related case, *Carver* v. *Bank of New York Mellon,* 1:15-cv-10180 (the "ERISA Action"), which delayed the commencement of depositions of the Bank's witnesses. *(See* Dkt. No. 66.) The ERISA Plaintiffs had also served a document request in October, which threatened to delay depositions further. In connection with that dispute, the parties appeared before Your Honor for a telephonic discovery conference on November 14, 2017. At that time, with respect to the ERISA Plaintiffs' October document request, Your Honor noted that October seemed "a very late time" to serve the request given the February fact discovery deadline. (Dkt. No. 73 at 12.) In order to keep deposition discovery on track, Your Honor asked the parties to agree to "an outside date for a final production of documents or otherwise bringing any disputes to the Court's attention," and the parties agreed to December 15, 2017 as that "outside date." (*Id.* at 24-26.) None of the parties mentioned the possibility that new document requests would be served following that conference, much less after the December 15, 2017 cutoff for document productions. Indeed, during

that conference, Plaintiffs represented to the Court that they were prepared to complete all fact discovery by February 28, 2018.[1] Nonetheless, to facilitate coordination with the ERISA Action, the Court extended the fact discovery deadline by 60 days, to April 30, 2018. (*Id.* at 22.)

Following the discovery conference, BNYM completed its production in a timely manner, consistent with the Court's direction. Depositions of the Bank's witnesses began in December 2017. In January 2018, plaintiffs took the depositions of the two most significant witnesses in the case, who testified as corporate designees for the Bank as well as in their individual capacity. To date, eight witnesses for the Bank have been deposed, and those depositions have taken a total of 11 days.

In the midst of these depositions and unprompted by any new event or information, Plaintiffs served their Fourth Request on January 26, 2018. That Fourth Request sought correspondence among eleven individuals, six of whom had not previously been identified as custodians in the case, as Plaintiffs have known since May 2017. Moreover, notwithstanding that the putative class period alleged in the operative complaint begins January 1, 1997, and all of Plaintiffs' previous requests sought documents starting from that date, the Fourth Request sought documents going back a year earlier, to January 1, *1996*.

In response to the Fourth Request, BNYM objected to further production on several grounds, including that the Request was untimely. Although Plaintiffs feign surprise at BNYM's position (as well as at its having taken the time allotted under the Federal Rules to respond to Plaintiffs' Fourth Request), they neglect to mention that BNYM took this same position before, in response to a request on December 11, 2017 that BNYM produce documents for two new document custodians. In making that December 11 request, Plaintiffs offered to discuss a "modest extension to the December 15 production deadline." In response to that Request, the Bank responded that it was puzzled that Plaintiffs were making that untimely request for the first time in December. The Bank declined to search for any additional documents, or to agree to an extension of the December 15 production deadline. Plaintiffs did not press their request further.

## II. **Plaintiffs Have No Basis to Request Further Document Discovery.**

Plaintiffs' March 7, 2018 letter poses the question presented as "whether BNYM must respond to a single document request, served well within the fact-discovery

---

[1] At the November 14, 2017 discovery conference, the Court asked Plaintiffs' counsel directly, "as far as you're concerned, you could live with the February 28 deadline as long as you are able to take the depositions you wanted to and have the time that you felt was necessary?" Plaintiffs' counsel responded that they were "ready to begin with depositions" and "prepared to proceed . . . to meet the February 28 deadline." (Dkt. No. 73 at 14.)

Hon. James L. Cott 4

period, seeking information regarding the germination of the pricing practices at the heart of Plaintiffs' claims." That misstates the question. The question here is whether BNYM must now search—three months after the Court's deadline for production of documents, after the key depositions in the case have already been taken—for 22-year-old documents of at best marginal relevance when nothing prevented Plaintiffs from seeking such documents before, in a timely manner. The answer to that question is no.

*First*, Plaintiffs' Fourth Request does not seek any "new" category of documents about which there has not already been ample discovery in this case. Plaintiffs have already sought and received discovery concerning the origins of the pricing practices at issue in this case, and do not dispute that responsive documents have been in their possession since at the latest last June. The only difference between the new request and the old requests is that Plaintiffs now ask the Bank to expend additional resources and expense searching for documents dating *back to 1996* and demand that the Bank search the files of six new custodians.

Nothing prevented Plaintiffs from requesting this information earlier, and Plaintiffs offer no excuse for their failure to do so. Plaintiffs—not the Bank—chose to define the relevant time period for their previous requests as January 1, 1997 through the present. Although the Bank objected to the staggering overbreadth of that 20+-year date range, it searched for and produced responsive documents for the entire period. Plaintiffs have also had BNYM's custodian list since May 2017. They could have pressed the Bank to add the new custodians identified in the Fourth Request (all of whom Plaintiffs have known about since before this case began) at any time before the December 15 cut-off—indeed, Plaintiffs sought documents from one of these new custodians on December 11, 2017, but, upon the Bank's objection that the request was untimely, did not pursue the request further.

Although they have long possessed the documents that allegedly form the basis of the Fourth Request, Plaintiffs try to justify their tardiness by claiming that they only focused on the "documents referencing the initial discussions among the Bank's Global Markets and ADR division" a little more than two months ago when they began preparing for depositions. Even if their failure to appreciate the alleged significance of the documents earlier were exculpatory, that assertion cannot be true. From the beginning of this action, Plaintiffs have focused on the 1997 events surrounding the Bank's purported change in FX practices—indeed, that change, and those documents (some of which were produced to Plaintiffs' counsel in a prior action before Judge Kaplan), are the purported justification for the absurdly long putative class period. Moreover, it cannot be true that Plaintiffs began preparing for depositions only two months ago—they began noticing depositions in August, and represented to the Court in November that they would be able to start those depositions forthwith and complete all depositions by the end of February. There is no justification for their delay.

*Second*, that Plaintiffs did not think to seek these documents sooner speaks to their irrelevance to any fact of consequence. The sole remaining claim in this case is

Hon. James L. Cott                                                                                                          5

for breach of contract. Plaintiffs allege that BNYM's pricing of FX conversions of cash distributions for ADR holders breached certain provisions in the contracts governing BNYM's relationship with ADR holders. The merits of that claim will turn on two things: (1) how BNYM actually priced FX conversion for ADR holders during the relevant period, and (2) whether that pricing breached the relevant contracts. Email discussion about the pricing of ADR FX conversions from 22 years ago—before the putative class period began—can do nothing to illuminate how actually BNYM priced FX conversions during the putative class period, which is discernible from the data BNYM has produced, or make it more or less probable that BNYM breached the relevant contracts during the putative class period. See Fed. R. Evid. 401.

Nor is Plaintiffs' claim that they seek documents relating to their fraudulent concealment arguments any more compelling. Plaintiffs do not explain how information from 1996 discussing moving the FX conversion in-house has any bearing on whether a class of Plaintiffs beginning in 1997 could have discovered the factual basis for their claims before the limitations period.

*Finally*, the 22-year-old documents Plaintiffs request relate to a period that exceeds any applicable statute of limitations by more than fourteen years. The Bank has filed a motion for partial summary judgment seeking to dismiss Plaintiffs' claims predating the statute of limitations, as Judge Caproni already has done in an action asserting substantially the same claims against another depositary bank, JPMorgan Chase, filed by some of the same counsel as in this action. (See Dkt. Nos. 76-80; Merryman v. J.P. Morgan Chase Bank, N.A., No. 15-cv-9188 (VEC), 2016 WL 5477776 (S.D.N.Y. Sept. 29, 2016).) Notwithstanding the Bank's position, about which it has been consistent since the commencement of this action, that Plaintiffs are bound by the statute of limitations, and even though none of the current putative class representatives actually held ADRs before the limitations period (Dkt. No. 77 at 22-25), BNYM produced documents dating back to 1997. Plaintiffs have had every opportunity to conduct broad discovery based on their bloated putative class period, but at this point in the case, it is time to say "enough."

***

For the reasons set forth above, we respectfully request that the Court deny Plaintiffs' request to compel the production of documents.

Respectfully yours,

Elizabeth M. Sacksteder

cc:     All counsel of record (via ECF)