**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: THE BANK OF NEW YORK MELLON ADR FX LITIGATION | 16-CV-00212-JPO-JLC

ECF Case |
| This Document Relates to:

ALL ACTIONS | |

**MEMORANDUM IN SUPPORT OF LEAD PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF THE PROPOSED FORMS AND MANNER OF NOTICE TO BE DISSEMINATED IN CONNECTION WITH THE PROPOSED SETTLEMENT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND AND SUMMARY OF THE PROPOSED SETTLEMENT ............................ 2

    A.    This Case Has Been Intensively Litigated for Nearly Three Years, and the Proposed Settlement Resulted from Months of Arm's-Length Negotiations Before a Highly Experienced and Respected Mediator. ...................................... 2

    B.    The Settlement Provides Significant Relief to Settlement Class Members to Be Distributed Under a Reasonable and Equitable Plan of Allocation. ............ 4

ARGUMENT ................................................................................................................ 6

I.    THE SETTLEMENT WILL LIKELY BE APPROVED AS FAIR, REASONABLE, AND ADEQUATE UNDER RULE 23(e)(2) ..................................... 6

    A.    The Amendments to Rule 23 Reinforce Longstanding Practice in This Circuit Regarding a Court's Role in Initially Evaluating a Proposed Settlement. ........................................................................................ 6

    B.    The "Procedural" Aspects of the Settlement Satisfy Rule 23(e). ........................ 7

    C.    The Settlement's Terms Will Likely Be Found Adequate.................................... 8

        1.    The Settlement provides substantial relief, especially in light of the costs, risks, and delay of further litigation. ............................................... 9

        2.    The proposed Plan of Allocation is an effective and equitable means of distributing relief to the Settlement Class. ............................... 10

        3.    The anticipated request for attorneys' fees poses no hurdle to finding the Settlement adequate. .............................................................. 12

        4.    Lead Plaintiffs have identified all agreements made in connection with the Settlement. ................................................................................ 12

II.    THE PROPOSED SETTLEMENT CLASS WILL LIKELY BE CERTIFIED ............. 13

    A.    Each of Rule 23(a)'s Prerequisites Is Satisfied.................................................. 14

        1.    The proposed Settlement Class is sufficiently numerous. ....................... 14

        2.    Questions of law and fact are common to Settlement Class Members. ................................................................................................ 14

        3.    The proposed Settlement Class representatives' claims are typical. ....... 16

        4.    The proposed Settlement Class representatives and Class Counsel will fairly and adequately protect the Settlement Class's interests.......... 16

# TABLE OF CONTENTS
## (continued)

Page

B. The Record Also Contains Sufficient Evidence Supporting Rule 23(b)(3)'s Predominance and Superiority Requirements ..................................................... 17

    1. Common issues predominate over any individual ones ........................... 17

    2. A class action is superior to thousands of individual actions. ................. 18

III. THE PROPOSED FORMS AND MANNER OF NOTICE COMPLY WITH RULE 23 AND DUE PROCESS ................................................................. 19

A. The Proposed Combination of Individual Mailed Notice, an Extensive Multimedia Notice Program, and a Settlement Website Is Reasonably Directed to Apprising Settlement Class Members of Their Rights. ................... 20

B. The Proposed Notice Clearly and Concisely Informs Settlement Class Members About the Settlement's Terms and Their Rights. ............................... 23

IV. THE COURT SHOULD ADOPT THE PROPOSED SCHEDULE FOR APPROVING THE SETTLEMENT .......................................................... 24

CONCLUSION ..................................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)................................................................................. 13

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  568 U.S. 455 (2013)................................................................................. 14

*Butler v. Sears, Roebuck & Co.*,
  727 F.3d 796 (7th Cir. 2013) ................................................................. 17

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ...................................................................... 7

*Denney v. Jenkens & Gilchrist*,
  230 F.R.D. 317 (S.D.N.Y. 2005), *aff'd in relevant part sub nom. Denney v. Deutsche Bank
  AG*, 443 F.3d 253 (2d Cir. 2006) .......................................................... 19

*Dornberger v. Metro. Life Ins. Co.*,
  203 F.R.D. 118 (S.D.N.Y. 2001) ...................................................... 22, 23

*Dover v. British Airways, PLC (UK)*,
  323 F. Supp. 3d 338 (E.D.N.Y. 2018) .............................................. 11, 18

*Ebin v. Kangadis Food Inc.*,
  297 F.R.D. 561 (S.D.N.Y. 2014) ........................................................... 14

*Edwards v. N. Am. Power & Gas, LLC*,
  2018 WL 3715273 (D. Conn. Aug. 3, 2018) ......................................... 21

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*,
  301 F.R.D. 116 (S.D.N.Y. 2014) ..................................................... 14, 17

*In re "Agent Orange" Prod. Liab. Litig. MDL No. 381*,
  818 F.2d 145 (2d Cir. 1987) ................................................................... 23

*In re Barrick Gold Sec. Litig.*,
  314 F.R.D. 91 (S.D.N.Y. 2016) ............................................................. 14

*In re Citigroup Inc. Bond Litig.*,
  296 F.R.D. 147 (S.D.N.Y. 2013) ........................................................... 10

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009) ..................................................................... 16

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ............................................................. 8

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  11 MD 2262 (NRB), 2018 WL 3475465 (S.D.N.Y. July 19, 2018)......... 7

1671582.6

## TABLE OF AUTHORITIES
### (continued)

Page

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
  246 F.R.D. 156 (S.D.N.Y. 2007) ................................................................... 22

*In re Nissan Motor Corp. Antitrust Litig.*,
  552 F.2d 1088 (5th Cir. 1977) ..................................................................... 20

*In re Platinum & Palladium Commodities Litig.*,
  No. 10cv3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) ......................... 22

*In re Traffic Exec. Ass'n E. R.R.s*,
  627 F.2d 631 (2d Cir. 1980) ........................................................................... 7

*In re U.S. Foodservice Inc. Pricing Litig.*,
  729 F.3d 108 (2d Cir. 2013) ............................................................. 17, 18, 19

*Merryman v. Citigroup, Inc.*,
  No. 15 Civ. 9185 (CM), 2018 WL 1621495 (S.D.N.Y. Mar. 22, 2018) ............... 15, 16, 17, 19

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ....................................................................................... 24

*Ortiz v. Chop't Creative Salad Co.*,
  No. 13 Civ. 2541(KNF), 2014 WL 1378922 (S.D.N.Y. Mar. 25, 2014) ................. 7

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015) ........................................................................... 18

*Spann v. J.C. Penney Corp.*,
  314 F.R.D. 312 (C.D. Cal. 2016) ................................................................... 22

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011) ........................................................................... 19

*Velez v. Majik Cleaning Serv., Inc.*,
  No. 03 Civ. 8698(SAS)(KNF), 2007 WL 7232783 (S.D.N.Y. June 25, 2007) ......... 10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ............................................................... 7, 20, 23

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
  208 F.3d 288 (1st Cir. 2000) ........................................................................... 19

*Weigner v. City of New York*,
  852 F.2d 646 (2d Cir. 1988) ........................................................................... 22

### STATUTES

Class Action Fairness Act, 28 U.S.C. § 1715(b) ........................................... 25

### RULES

Fed. R. Civ. P. 23(b)(3) .................................................................................. 18

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

Fed. R. Civ. P. 23(b)(3)(D) ................................................................................................. 19

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................ 20, 23

Fed. R. Civ. P. 23(e)(1) ....................................................................................................... 1

Fed. R. Civ. P. 23(e)(1)(B) .................................................................................................. 6

Fed. R. Civ. P. 23(e)(2) .................................................................................................... 1, 7

Fed. R. Civ. P. 23(e)(2)(C)(ii) ........................................................................................... 10

Fed. R. Civ. P. 23(e)(2)(C)(iii) .......................................................................................... 12

Fed. R. Civ. P. 23(e)(2)(D) ............................................................................................... 10

Fed. R. Civ. P. 23(g)(1)(A) ............................................................................................... 16

### TREATISES

2 McLaughlin on Class Actions § 6.24 (15th ed.) .............................................................. 12

### OTHER AUTHORITIES

Fed. R. Civ. P. 23(e)(2) advisory committee's note ............................................................ 7

Fed. R. Civ. P. 23(e)(2)(A) & (B) advisory committee's note ......................................... 7, 8

Fed. R. Civ. P. 23(e)(2)(C) & (D) advisory committee's note ........................................... 10

## PRELIMINARY STATEMENT

Plaintiffs David Feige, International Union of Operating Engineers Local 138 Annuity Fund ("Local 138"),[1] and Annie L. Normand (collectively, "Named Plaintiffs"), as well as Diana Carofano and Chester County Employees Retirement Fund (together with Named Plaintiffs, "Lead Plaintiffs"), are pleased to present their proposed Settlement with The Bank of New York Mellon ("BNYM" or the "Bank") to the Court.[2] Federal Rule of Civil Procedure 23, as recently amended, provides that at this initial stage of the Settlement-approval process, notice should issue if the Court determines it "will likely be able to" (1) approve the proposed Settlement, based on whether the proposed Settlement Class representatives and proposed Class Counsel "have adequately represented the class," and whether the Settlement "was negotiated at arm's length," provides "adequate" relief for the Settlement Class, and treats Settlement Class Members "equitably relative to each other"; and (2) "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1) & (2). The record adduced during discovery, as well as the procedural and substantive aspects of the Settlement, amply satisfy those requirements.

Lead Plaintiffs therefore respectfully request that the Court enter an order, substantially in the form attached as Exhibit A to the Stipulation ("Notice Order"), (1) directing that notice be provided to Settlement Class Members in the forms (as reflected in Exhibits A-1 through A-4 to the Stipulation) and manner proposed by Lead Plaintiffs; (2) appointing Lead Plaintiffs as representatives of the proposed Settlement Class for purposes of disseminating notice, and appointing Lieff Cabraser Heimann & Bernstein, LLP ("Lieff Cabraser") and Kessler Topaz

---

[1] The operative complaint in this action named International Union of Operating Engineers Local 138 Pension Trust Fund. The proper Named Plaintiff is International Union of Operating Engineers Local 138 Annuity Fund.

[2] Capitalized terms have the same meanings as in the Stipulation and Agreement of Settlement ("Stipulation") attached as Exhibit 1 to the accompanying Declaration of Daniel P. Chiplock ("Chiplock Decl."), which is being submitted, along with the Declaration of Sharan Nirmul ("Nirmul Decl.") and the Declaration of Jeanne C. Finegan, APR ("Finegan Decl."), in support of this motion. Additionally, unless otherwise indicated, all emphasis in this brief has been added, and all internal citations and quotation marks have been omitted.

Meltzer & Check LLP ("Kessler Topaz," and together with Lieff Cabraser, "Lead Plaintiffs' Counsel") as counsel for the proposed Settlement Class; (3) authorizing the retention of Kurtzman Carson Consultants LLC ("KCC") as Claims Administrator and HF Media, LLC as Publication Notice Plan Administrator; and (4) scheduling a hearing to determine whether the Settlement is fair, reasonable, and adequate under Rule 23(e)(2) and whether the Settlement Class should be certified ("Final Approval Hearing").

## BACKGROUND AND SUMMARY OF THE PROPOSED SETTLEMENT

### A.   This Case Has Been Intensively Litigated for Nearly Three Years, and the Proposed Settlement Resulted from Months of Arm's-Length Negotiations Before a Highly Experienced and Respected Mediator.

On January 11, 2016, Annie L. Normand, Don A. Carofano and David Feige filed an action in this Court ("Normand Action") alleging that in effectuating foreign exchange ("FX") conversions of dividends and other cash distributions owed to investors in American Depositary Receipts ("ADRs") for which it acted as the depositary, BNYM breached the terms of its depositary agreements with those investors.  On February 19, 2016, Local 138 filed a similar action in the Eastern District of New York (*International Union of Operating Engineers Local 138 Pension Trust Fund v. The Bank of New York Mellon*, No. 16-cv-02834-JPO) ("Local 138 Action")), which was later transferred to this Court and consolidated with the Normand Action.

On February 26, 2016, BNYM moved to dismiss the Normand Action under Rules 12(b)(1) and 12(b)(6) as well as the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), which BNYM argued precluded state-law claims arising from the alleged misconduct.  BNYM also argued that Plaintiffs Normand, Carofano, and Feige lacked standing to bring claims on behalf of certain members of the asserted class, and that the statute of limitations barred certain claims.  On September 29, 2016, the Court granted in part and denied

in part BNYM's motion to dismiss, upholding those Plaintiffs' breach of contract claims and determining BNYM's class standing and timeliness arguments were premature.  ECF No. 36.[3]

The parties then commenced discovery, which was contested from the start, as Named Plaintiffs filed a motion to compel the production of certain documents produced in prior litigation arising from alleged unlawful FX conversion practices in BNYM's custody banking business (consolidated as *In re Bank of New York Mellon FX Transactions Litigation*, No. 12-md-2335 (LAK) (JLC) ("BNYM FX MDL")).  *See* ECF No. 47.  Further, in an effort to accommodate and coordinate with another class action concerning BNYM's ADR FX practices also pending before this Court,[4] the parties sought and received an extension of discovery.  In all, fact discovery proceeded for approximately one year, ending on February 28, 2018—with BNYM having produced over 2.7 million pages of documents, including over 136,000 spreadsheets, and Named Plaintiffs having produced over 23,000 pages of documents.  Named Plaintiffs also deposed 13 of BNYM's current and former employees, including four Rule 30(b)(6) designees, and BNYM deposed Mr. Feige, Mr. Carofano (Ms. Carofano's since-deceased husband, an original plaintiff),[5] and Local 138's designee.

As fact discovery drew to a close, BNYM moved for partial summary judgment on February 12, 2018, renewing its arguments concerning the statute of limitations and Named Plaintiffs' standing to pursue claims on behalf of class members who held ADRs not held by Named Plaintiffs.  *See* ECF No. 76.  To obviate both of those arguments in part, Named Plaintiffs moved on April 27, 2018 to add Chester County Employees Retirement Fund ("Chester

---

[3] After consolidating the Local 138 Action with this case, the Court permitted Named Plaintiffs to file a consolidated amended complaint, which they did on October 26, 2016 (ECF No. 39).

[4] *Carver, et al. v. The Bank of New York Mellon, et al.*, No. 15-cv-10180-JPO-JLC.

[5] A motion to substitute Diana Carofano for Don Carofano (ECF No. 124) was pending at the time the Court stayed all pending deadlines after being informed that the parties had reached an agreement in principle to settle the case.

County") as a named plaintiff.  *See* ECF No. 113.  On May 15, 2018, Named Plaintiffs moved

for class certification (*see* ECF No. 122 ("Plaintiffs' Opening Class Cert. Br.")), and filed an

accompanying expert report.  BNYM filed its opposition on June 5, 2018 (ECF No. 130),

including a responsive expert report, and Named Plaintiffs filed their reply on June 19, 2018

(ECF No. 138), including a rebuttal report from their expert.  Lead Plaintiffs' and BNYM's

respective experts were each deposed twice.

     While the parties' respective motions were pending, they began exploring a possible

settlement.  They engaged PhillipsADR, led and founded by an experienced and well-respected

mediator, retired federal judge Layn R. Phillips.  On March 22-23, 2018, the parties met for an

in-person mediation session, and later participated in two additional in-person sessions, an in-

person meeting without a mediator, and numerous telephone calls and e-mail correspondence.

The parties accepted a mediator's proposal on financial terms on August 10, 2018, signed a term

sheet setting forth the material terms of their agreement on October 16, 2018, and then proceeded

to negotiate the terms of the Stipulation, which was fully executed on January 15, 2019.

     **B.**    **The Settlement Provides Significant Relief to Settlement Class Members to Be Distributed Under a Reasonable and Equitable Plan of Allocation.**

     The Settlement provides for $72.5 million in gross recovery in exchange for Settlement

Class Members' release of all claims against BNYM arising from the facts or circumstances of

this litigation.  Stip. ¶¶ 5-11.  Under the Settlement, each eligible Settlement Class Member

("Authorized Recipient") will receive his, her, or its pro rata share of the Net Settlement Fund,

i.e., after accounting for the payment of attorneys' fees and reimbursement of litigation expenses,

including any service awards to Lead Plaintiffs, all subject to Court approval.  Entities and

individuals are potentially eligible to receive Settlement proceeds if at any time during the

Settlement Class Period—January 1, 1997 through the date the Notice Order is entered—they

held (directly or indirectly, registered or beneficially), or otherwise claim any entitlement to any payment in connection with, any ADR for which BNYM acted as the depositary that was sponsored by an issuer identified in the Appendix to the Stipulation (also included as an appendix to the Notice) ("Settlement Appendix").

The Plan of Allocation aims to equitably distribute the Net Settlement Fund among Settlement Class Members. The Plan reflects Lead Plaintiffs' view of the average annual margin per ADR that BNYM retained on FX conversions of ADR dividends and cash distributions, as determined by Lead Plaintiffs' damages expert. That determination is also informed by data produced by BNYM concerning the amount (if any) the Bank retained for cash distributions issued for the ADRs listed in the Settlement Appendix. Using that data, Lead Plaintiffs' damages expert calculated the average margin per ADR across the Settlement Class Period.

Under the Plan, to the extent the Net Settlement Fund contains sufficient funds, each Authorized Recipient will receive an amount equal to its "Recognized Claim," as described below. But if, as expected, the amount in the Net Settlement Fund is not sufficient for each Authorized Recipient to receive its total Recognized Claim, then each Authorized Recipient will receive the percentage of the Net Settlement Fund that its Recognized Claim bears in relation to the total of the Recognized Claims of all Authorized Recipients.

Each Settlement Class Member's Recognized Claim will be calculated by adding together its Recognized Loss Amounts Per ADR, determined for each eligible ADR it invested in by multiplying the gross amount of cash distributions it received for that ADR by the calculated average margin for that ADR (provided in the Plan of Allocation). The Authorized Recipient's "Distribution Amount" will then be calculated, reflecting its Recognized Claim divided by the total Recognized Claims of all Authorized Recipients, multiplied by the total amount in the Net

Settlement Fund (no distributions will be made to Authorized Recipients with Distribution Amounts of less than $1.00).

Following the initial distribution of the Net Settlement Fund, the Claims Administrator will make reasonable and diligent efforts to have Authorized Recipients cash their distribution checks.  To the extent any funds remain in the Net Settlement Fund nine months after the initial distribution, the Claims Administrator will—if Lead Plaintiffs' Counsel, in consultation with the Claims Administrator, determine it is cost-effective to do so—redistribute the funds remaining (after paying any unpaid fees and expenses, including for the redistribution) to Authorized Recipients who cashed their initial distributions and who would receive at least $1.00 from the redistribution.  Lead Plaintiffs' Counsel would be permitted to authorize further redistributions in a similar manner if they determine doing so would be cost-effective.  If and when Lead Plaintiffs' Counsel determine otherwise, they will request that the Court (1) approve their recommendation that any further redistribution would not be cost effective or efficient, and (2) order that the remainder of the Net Settlement Fund be contributed to a nonsectarian charitable organization selected by the Court upon Lead Plaintiffs' application.

## ARGUMENT

I. **THE SETTLEMENT WILL LIKELY BE APPROVED AS FAIR, REASONABLE, AND ADEQUATE UNDER RULE 23(e)(2)**

A. **The Amendments to Rule 23 Reinforce Longstanding Practice in This Circuit Regarding a Court's Role in Initially Evaluating a Proposed Settlement.**

Rule 23, as revised as of December 1, 2018, directs that the Court determine whether it "will be likely" to grant final approval under Rule 23(e)(2) and "certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  These recent modifications reflect the longstanding practice in this Circuit of determining whether there is "'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."  *In re LIBOR-*

*Based Fin. Instruments Antitrust Litig.*, 11 MD 2262 (NRB), 2018 WL 3475465, at *1 (S.D.N.Y. July 19, 2018) (quoting *In re Traffic Exec. Ass'n E. R.R.s*, 627 F.2d 631, 634 (2d Cir. 1980)). This has involved an initial assessment of "procedural" fairness, focused on whether the settlement resulted from arm's-length negotiations informed by developed facts, *see Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005), and of the agreement's terms—collectively, the "*Grinnell* factors." *See, e.g.*, *Ortiz v. Chop't Creative Salad Co.*, No. 13 Civ. 2541(KNF), 2014 WL 1378922, at *12 (S.D.N.Y. Mar. 25, 2014) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)).

The newly amended Rule 23 does not change this fundamental inquiry. *See* Fed. R. Civ. P. 23(e)(2) advisory committee's note (observing "[c]ourts have generated lists of factors to shed light on" whether a proposed settlement is "fair, reasonable, and adequate," and noting "[t]he goal of this amendment is not to displace any factor"). But the Rule now "focus[es]" the inquiry on "the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal," *id.*—that is, whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Those factors, which largely reflect the *Grinnell* framework, are readily satisfied here.

### B. The "Procedural" Aspects of the Settlement Satisfy Rule 23(e).

Rule 23(e)(2)'s first two factors "look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A) & (B) advisory committee's note. Courts may consider "the nature and amount of discovery in this or other

cases, or the actual outcomes of other cases, [which] may indicate whether counsel negotiating on behalf of the class had an adequate information base." *Id.* This Settlement embodies all the hallmarks of a procedurally fair resolution.

*First*, Lead Plaintiffs' Counsel's settlement posture was informed by more than a year of fact discovery, which included reviewing more than 2.7 million pages of documents, taking or defending 20 depositions, and fully briefing class certification and partial summary judgment motions. Counsel thus unquestionably possessed sufficient information about the evidence and prospects of success at trial to negotiate a fair, reasonable, and adequate Settlement. *See, e.g.*, *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011) (presumption of fairness where parties were represented by experienced counsel and the case "proceeded well into both class certification and merits discovery before settlement was reached.").

*Second*, the parties' settlement negotiations were at arm's length, protracted, and facilitated by an experienced mediator. *See* Fed. R. Civ. P. 23(e)(2)(A) & (B) advisory committee's note ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."); *Giant Interactive*, 279 F.R.D. at 160 (approving settlement that was the product of "arms-length negotiation . . . facilitated by a respected mediator.").

### C. The Settlement's Terms Will Likely Be Found Adequate.

Rule 23(e)(2)(C) and (D) direct the Court to evaluate whether "the relief provided for the class is adequate" and "the proposal treats class members equitably relative to each other." The relief this Settlement provides is well beyond "adequate"—it is exceptional. And the Settlement's terms, including the proposed Plan of Allocation, ensure all Settlement Class Members will be treated equitably.

   1.     **The Settlement provides substantial relief, especially in light of the costs, risks, and delay of further litigation.**

The $72.5 million settlement amount represents nearly 24% of the almost $304 million total margin amount attributable to the Settlement Class, as agreed by the parties for purposes of the Settlement ("Agreed Margin Amount"), which is consistent with Lead Plaintiffs' damages expert's calculation during the litigation.  And no amount of the Net Settlement Fund will revert to BNYM.  This is an excellent result by any standard.  According to one study, for example, the median settlement between 1996 and 2017 in securities cases with investor losses of between $200 million and $399 million reflected 2.6% of investor losses.[6]  While Lead Plaintiffs theoretically could obtain a larger recovery at trial than the Settlement offers, that prospect is far outweighed by this immediate and sizeable benefit to Settlement Class Members.

Further, the Settlement comes at a moment of substantial uncertainty in this litigation, with BNYM's motion for partial summary judgment, Named Plaintiffs' class certification motion, and their motion to add Chester County as a lead plaintiff all pending.  Although Lead Plaintiffs' Counsel were confident of their prospect of success, there was a meaningful possibility the Court's rulings would have shrunk the size of the class and the potential recovery.  And even had Named Plaintiffs prevailed on each motion, they still would have faced a potential interlocutory appeal of a favorable class certification decision, a summary judgment motion on Named Plaintiffs' own claims (as opposed to challenging their ability to assert claims of other class members), trial, and appeal.  The Settlement thus "benefits each plaintiff in that he or she will recover a monetary award immediately, without having to risk that an outcome unfavorable

---

[6] *See Recent Trends in Securities Class Action Litigation: 2017 Full-Year Review*, at 37, available at https://www.nera.com/content/dam/nera/publications/2018/PUB_Year_End_Trends_Report_0118_final.pdf.

to the plaintiffs will emerge from a trial." *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698(SAS)(KNF), 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007).

> **2.** **The proposed Plan of Allocation is an effective and equitable means of distributing relief to the Settlement Class.**

The Court must also ultimately assess the Settlement's effectiveness in distributing relief to the Settlement Class.  Fed. R. Civ. P. 23(e)(2)(C)(ii).  Here, too, the Court can readily find the Settlement will likely earn approval.  The Settlement provides for a straightforward and effective means of distributing the Net Settlement Fund to the Settlement Class, and treats Settlement Class Members equitably relative to each other.  *See* Fed. R. Civ. P. 23(e)(2)(D).

"When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis."  *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 158 (S.D.N.Y. 2013).  As detailed above, the Plan of Allocation provides that eligible Settlement Class Members will be allocated a portion of the Net Settlement Fund based on the amount of their holdings in the ADRs encompassed by the Settlement, and in exchange BNYM will receive a release that does not vary among Settlement Class Members. The Plan thus has a rational, equitable basis.  *See* Fed. R. Civ. P. 23(e)(2)(C) & (D) advisory committee's note (identifying, among potential "[m]atters of concern," whether "the scope of the release may affect class members in different ways that bear on the apportionment of relief").

There is only one difference in how Settlement Class Members are treated under the Settlement, and it is appropriate.  Eligible Registered Holder Settlement Class Members—i.e., those who hold (or held) their eligible securities directly and who are listed on the records of BNYM's transfer agent, Computershare, Inc., and whose contact, holding, and distribution information has been (or is in the process of being) provided to Lead Plaintiffs' Counsel by Computershare (Stip. ¶ 1(kk))—will be eligible to receive a payment without having to submit a

claim form, whereas eligible Non-Registered Holder Settlement Class Members—i.e., those who are not included on Computershare's records, including those that hold (or held) their eligible securities through a bank, broker, or other nominee rather than directly (*id.* ¶ 1(z))—must submit a claim form to be eligible for a payment.  That distinction merely reflects the disparity in information reasonably available to Lead Plaintiffs' Counsel concerning those respective categories of Settlement Class Members.

Because information regarding Registered Holder Settlement Class Members is accessible (for a fee) through Computershare, Lead Plaintiffs' Counsel will have access to those holders' contact, holding, and distribution information.  On the other hand, information regarding Non-Registered Holder Settlement Class Members is not readily accessible to Lead Plaintiffs' Counsel, and indeed would be unreasonably burdensome—and in some cases potentially impossible—to obtain.  As notice expert Jeanne C. Finegan attests, identifying Non-Registered Holder Settlement Class Members presents unique challenges (highlighted here given the age and length of the Settlement Class Period) because "there have been numerous financial institution and corporate and brokerage firm mergers, wherein smaller acquisitions have been shuttered and, as a result, data for Non-Registered Settlement Class Members has become outdated, archived and/or purged, and therefore not reasonably ascertainable."  Finegan Decl. ¶ 13.  That problem "is compounded by a lack of follow-up by third-parties and brokerage firms to update or obtain new names and addresses for notice purposes."  *Id.*  The proposed method of providing funds to eligible Settlement Class Members appropriately accounts for these realities. *See Dover v. British Airways, PLC (UK)*, 323 F. Supp. 3d 338, 344 (E.D.N.Y. 2018) (approving "the different treatment of the two groups [of settlement class members]" that "result[ed] not from a preference or differing interests, but instead from technical limitations").

### 3. The anticipated request for attorneys' fees poses no hurdle to finding the Settlement adequate.

Nothing about Lead Plaintiffs' Counsel's anticipated request for attorneys' fees—consisting of no more than 30% of the $72.5 million settlement amount—should prevent notice from issuing.  *See* Fed. R. Civ. P. 23(e)(2)(C)(iii).  The fee request will fall well within the range of requests for similar settlements, and will befit the substantial risks Lead Plaintiffs' Counsel undertook in pursuing these claims, their intensive efforts on behalf of the Settlement Class, and the extraordinary resolution they have achieved.  Further, Settlement Class Members will have ample opportunity to weigh in on the proposed fee request before the Final Approval Hearing.

Additionally, the timing of payment of Lead Plaintiffs' Counsel's fees—upon the Court's issuance of an order awarding fees—is appropriate, and consistent with common practice in cases of this nature.  Critically, the Stipulation provides that if the Settlement is ultimately terminated or the fee award is later reduced or reversed, Lead Plaintiffs' Counsel will refund or repay the subject amount.  *See* 2 McLaughlin on Class Actions § 6.24 (15th ed.) ("In order to protect the class and the defendants, any quick pay provision should obligate all class counsel firms and their partners jointly and severally liable to refund any amounts paid under a quick pay provision if the settlement or fee award subsequently is disturbed.").

### 4. Lead Plaintiffs have identified all agreements made in connection with the Settlement.

Lead Plaintiffs are filing, along with this brief, a copy of the Stipulation detailing the terms of the Settlement.  *See* Chiplock Decl. Ex. 1.  As disclosed in the Stipulation, the parties have also entered into a Supplemental Agreement providing BNYM the option to terminate the Settlement if eligible Settlement Class Members representing an agreed-upon percentage of the Agreed Margin Amount request exclusion from the Settlement Class.

The parties have agreed the Supplemental Agreement will not be filed with the Court unless a dispute arises among them concerning its interpretation or application, or the Court orders that it be submitted, in which case the parties propose it be disclosed to the Court *in camera*. The Supplemental Agreement's terms are typical of similar agreements in other class settlements, and are consistent with the Settlement's overall adequacy.

## II.    THE PROPOSED SETTLEMENT CLASS WILL LIKELY BE CERTIFIED

The Settlement is conditioned on the certification of the following Settlement Class:

> [A]ll entities and individuals who at any time during the Settlement Class Period held (directly or indirectly, registered or beneficially), or otherwise claim any entitlement to any payment (whether a dividend, rights offering, interest on capital, sale of shares, or other distribution) in connection with, any American Depositary Share (sometimes known as an American Depositary Receipt) ("ADR") for which BNYM acted as the depositary sponsored by an issuer that is identified in the [Settlement] Appendix.

Stip. ¶ 1(tt).[7]  The parties have stipulated, solely for the purposes of the Settlement and subject to the Court's approval, to certification of the Settlement Class, appointment of Lead Plaintiffs as Settlement Class representatives, and appointment of Lead Plaintiffs' Counsel as Class Counsel.

Notably, in applying Rule 23 in the settlement context, the Court "need not inquire whether the case, if tried, would present intractable management problems"—a prerequisite to certification of a litigation class—"for the proposal is that there be no trial."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Further, merits questions "may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23

---

[7] The Stipulation further specifies:

> For avoidance of doubt, Settlement Class Members include all entities, organizations, and associations regardless of form, including investment funds and pension funds of any kind.  BNYM and its officers, directors, legal representatives, heirs, successors, corporate parents, subsidiaries, and/or assigns, other than Investment Vehicles (which are not excluded), are excluded from the Settlement Class only to the extent that such persons or entities had a proprietary (i.e., for their own account) interest in any such ADR and not to the extent that they hold or held such ADR in a fiduciary capacity or otherwise on behalf of any third-party client, account, fund, trust, or employee benefit plan that otherwise falls within the definition of the Settlement Class.

> *Id.*  Additionally, "any persons and entities who or which exclude themselves from the Settlement Class by submitting a request for exclusion that is accepted by the Court" will be excluded from the Settlement Class.  *Id.*

prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013).  In accordance with those principles, the record amply demonstrates (1) Rule 23(a)'s elements—numerosity, commonality, typicality, and adequacy—are satisfied; and (2) as prescribed by Rule 23(b)(3), common questions of law or fact predominate over any questions affecting only individual Settlement Class Members, and a class action is superior to any alternative method of litigating these claims.[8]

### A.      Each of Rule 23(a)'s Prerequisites Is Satisfied.

#### 1.      The proposed Settlement Class is sufficiently numerous.

Courts "do not require evidence of exact class size" to satisfy Rule 23(a)(1)'s numerosity requirement.  *In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 98 (S.D.N.Y. 2016).  The ADRs encompassed by this Settlement were (or are) publicly traded, and are thus likely held by thousands of investors.  Indeed, the very fact that more than 600 ADRs sponsored by over 340 issuers are included in the Settlement alone is enough to find numerosity, as courts in this Circuit "presume that the numerosity requirement is met if a putative class has forty or more members." *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 131 (S.D.N.Y. 2014) (Oetken, J.) ("*J.P. Morgan*").

#### 2.      Questions of law and fact are common to Settlement Class Members.

To establish commonality under Rule 23(a)(2), Lead Plaintiffs need only demonstrate at least one question of law or fact common to the Settlement Class—a "low hurdle." *J.P. Morgan*, 301 F.R.D. at 131.  Commonality can be shown "where the individual circumstances of class members differ but their injuries derive from a unity course of conduct by a single system." *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565 (S.D.N.Y. 2014).

---

[8] Lead Plaintiffs appreciate that BNYM disputes liability and has contested Named Plaintiffs' interpretation of evidence and legal principles in the context of their motion for certification of a litigation class.

That is precisely the case here, in several key respects.  *First*, the terms of the deposit agreements setting forth BNYM's obligations to ADR holders regarding ADR FX conversions were substantially similar.[9]  *Second*, BNYM allegedly applied a consistent pricing practice in converting FX for ADR-related cash distributions, which allegedly violated all (or the vast majority) of the deposit agreements in substantially the same way.[10]  And *third*, alleged damages to each Settlement Class Member as a result of BNYM's pricing practices are determinable on a classwide basis, using the Bank's own documents.  Those damages, as attested by Lead Plaintiffs' expert, consist of (1) the sales margin, over and above the fees permitted under the deposit agreements and the profit generated by risk traders' management of risk, that was recorded in connection with BNYM's ADR FX conversions for the ADRs encompassed by this proposed Settlement; and (2) interest, calculated using a simple annual interest rate of 9%, as prescribed by New York law.  *See, e.g.*, Pls.' Opening Class Cert. Br. 14-15.

In short, as Judge McMahon found in certifying a class of ADR holders asserting similar breach-of-contract claims against Citigroup, Lead Plaintiffs "have identified a question of law and fact that is common to the claims of all class members: whether [BNYM]'s retention of a spread when assigning FX rates to ADR holders' cash distributions breached the Deposit Agreement between it and the holders of the ADRs."  *Merryman v. Citigroup, Inc.*, No. 15 Civ. 9185 (CM), 2018 WL 1621495, at *14 (S.D.N.Y. Mar. 22, 2018).  Commonality is established.

---

[9] *See, e.g.*, Chiplock Decl. in Supp. of Pls.' Mot. for Class Certification (ECF No. 119) ("Chiplock Class Cert. Decl.") Ex. 1 (chart showing relevant provisions of 100 deposit agreements); Ex. 99 (Kenneth Lopian Dep. 176) (acknowledging BNYM "had a template for deposit agreements," including with respect to ADR FX conversions).

[10] *See, e.g.*, Chiplock Class Cert. Decl. Ex. 101 ("Procedures for ADR Dividend Conversions" dated April 1997, memorializing "what guidelines BNY FX needs to follow when pricing these trades"); Ex. 100, at 7 (2004 presentation stating the Bank of New York's Global Markets division "rigidly adheres to the ADR dividend conversion guidelines established seven years ago with input from ADR Division management"); Ex. 96 (BNYM October 1, 2015 ADR FX Pricing Disclosure, describing how the Bank used a 24-hour range of the day for FX conversions and assigned a rate to ADR holders that differed from the rate at which the Bank covered its position, thus generating additional profit for the Bank).

### 3.   The proposed Settlement Class representatives' claims are typical.

Demonstrating typicality under Rule 23(a)(3) requires only that "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).  As with commonality, typicality is established because "Plaintiffs' claims and the class claims arise from the same set of events—namely, [BNYM]'s retention of a spread from cash distributions."  *Merryman*, 2018 WL 1621495, at \*14.

### 4.   The proposed Settlement Class representatives and Class Counsel will fairly and adequately protect the Settlement Class's interests.

Adequacy under Rule 23(a)(4) turns on "whether 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation."  *Flag Telecom*, 574 F.3d at 35.  No conflicting interests exist here; to the contrary, "[a]ll members of the putative class, including the class representatives, share a collective interest in recouping the funds that they allege [BNYM] withheld in connection with payment of cash distributions."  *Merryman*, 2018 WL 1621495, at \*14.

Additionally, in determining whether to appoint Lieff Cabraser and Kessler Topaz as Class Counsel for purposes of the Settlement, the Court must examine:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the type of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).  Each of those prerequisites is readily satisfied.

Lead Plaintiffs' Counsel have prosecuted this case vigorously, having largely prevailed on BNYM's motion to dismiss, reviewed millions of pages of documents, taken or defended 20 depositions, and moved to add Chester County as a lead plaintiff in the event the Court were to hold Named Plaintiffs lacked class standing.  *See* discussion *supra*; Chiplock Decl. ¶¶ 3-5;

Nirmul Decl. ¶¶ 2-4.  Further, these firms have extensive experience litigating complex civil

cases.  *See* Chiplock Decl. Ex. 2 (Lieff Cabraser résumé); Nirmul Decl. Ex. 1 (Kessler Topaz

résumé).  They have thus demonstrated they are well able to serve the Settlement Class's

interests.

> ### B.     The Record Also Contains Sufficient Evidence Supporting Rule 23(b)(3)'s Predominance and Superiority Requirements.

> #### 1.     Common issues predominate over any individual ones.

Rule 23(b)(3)'s predominance requirement "is satisfied if resolution of *some* of the legal

or factual questions that qualify each class member's case as a genuine controversy can be

achieved through generalized proof, and if these particular issues are more substantial than the

issues subject only to individualized proof."  *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d

108, 118 (2d Cir. 2013).  The inquiry "is directed primarily toward whether the issue of liability

is common to members of the class, taking into account both affirmative claims and potential

defenses."  *J.P. Morgan*, 301 F.R.D. at 136.  But predominance does not turn on "whether there

are more common issues or more individual issues, regardless of relative importance"; rather,

"[a]n issue central to the validity of each one of the claims in a class action, if it can be resolved

in one stroke, can justify class treatment."  *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801

(7th Cir. 2013) (Posner, J.).  The facts here readily meet the predominance threshold.

> *First*, common questions predominate as to liability.  The issues at trial would include:

> (1) whether [BNYM] retained a spread when assigning FX rates to ADR holders' cash distributions in violation of the Deposit Agreements or, as [BNYM] insists, spreads are a permissible fee, expense, or charge under the terms of the Deposit Agreements; (2) whether [BNYM] fraudulently concealed this practice; and (3) the extent of class members' injuries, if any.

*Merryman*, 2018 WL 1621495, at *16.  Each of those issues turns on generalized proof.

Similarly, as in *U.S. Foodservice*, where the Second Circuit affirmed the certification of a

nationwide breach-of-contract class, "the uniform nature of [BNYM]'s alleged [breach of

contract] and [BNYM]'s concerted effort to shield its scheme from scrutiny place each [investor] in the same position as to these issues and ensure the cohesiveness of the class." 729 F.3d at 131; *see also Dover v. British Airways, PLC (UK)*, 321 F.R.D. 49, 57-58 (E.D.N.Y. 2017) (finding predominance where question whether charges were authorized under the contract was "central to the validity of Plaintiffs' claims and capable of resolution in one stroke").

*Second*, common issues predominate regarding damages, as Lead Plaintiffs' damages methodology "is consistent with the classwide theory of liability and capable of measurement on a classwide basis." *U.S. Foodservice*, 729 F.3d at 123 n.8. The alleged damages consist of the amount of additional margin revenue BNYM recorded on ADR FX conversions, over and above the profit generated by the Bank's risk traders and the revenues generated from fees authorized under the deposit agreements—the very practice that allegedly breached those agreements. And in any event, any individualized damages determinations "alone cannot preclude certification under Rule 23(b)(3)." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 409 (2d Cir. 2015).

**2.     A class action is superior to thousands of individual actions.**

In the settlement context, the superiority inquiry turns on:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; [and] (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum . . . .

Fed. R. Civ. P. 23(b)(3). Resolving this litigation through the class mechanism is plainly superior to litigation by individual Settlement Class Members.

The alternative to certifying the Settlement Class—potentially thousands of individual actions by ADR investors—would demand significant expenditures of resources by the parties and the judiciary, and would threaten to produce inconsistent rulings or judgments. It is "perfectly obvious that the costs of bringing individual actions for tiny amounts of money

outweigh any expected individual recovery." *Merryman*, 2018 WL 1621495, at *18 n.2. The lack of a single individual action by any Settlement Class Member asserting these claims further demonstrates the class vehicle's superiority here.

Because the fourth "superiority" factor—"the likely difficulties in managing a class action," Fed. R. Civ. P. 23(b)(3)(D)—does not bear on a settlement-only class, any variations among state laws governing Settlement Class Members' breach-of-contract claims or the statutes of limitations applicable to those claims (depending on where each Settlement Class Member resides), *see* Pls.' Opening Class Cert. Br. 28-30, "are largely irrelevant" to certification. *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 304 (3d Cir. 2011) (en banc); *accord Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 335 (S.D.N.Y. 2005) ("Because this is a settlement-only class, the Court need not be concerned with the feasibility of managing the trial of a class action involving many different states' laws."), *aff'd in relevant part sub nom. Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006). In any event, state-law variations do not present intractable issues in this case, as many of the relevant deposit agreements call for the application of New York law, *see* Chiplock Class Cert. Decl. Ex. 1, and to the extent they do not, "state contract law defines breach consistently such that the question will usually be the same in all jurisdictions." *U.S. Foodservice*, 729 F.3d at 127; *see also Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000) ("As long as a sufficient constellation of common issues binds class members together, variations in the sources and application of statutes of limitations will not automatically foreclose class certification under Rule 23(b)(3).").[11]

## III.   THE PROPOSED FORMS AND MANNER OF NOTICE COMPLY WITH RULE 23 AND DUE PROCESS

---

[11] So, too, regarding BNYM's alleged fraudulent concealment of its pricing practices from Settlement Class Members. *See U.S. Foodservice*, 729 F.3d at 128-29 & n.11 (holding "fraudulent concealment can be demonstrated via class-wide, generalized evidence," and rejecting defendant's assertion that individual issues predominated in light of several variations among states' standards); Chiplock Class Cert. Decl. Ex. 133 (state-law survey).

The polestar for assessing the adequacy of notice, whether through the lens of Rule 23 or constitutional due process, is "reasonableness." *Wal-Mart Stores*, 396 F.3d at 114. Reasonableness is, in turn, "a function of anticipated results, costs, and amount involved." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1099 (5th Cir. 1977). Both the manner of dissemination and the forms of the notice proposed here aim to ensure "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

### A. The Proposed Combination of Individual Mailed Notice, an Extensive Multimedia Notice Program, and a Settlement Website Is Reasonably Directed to Apprising Settlement Class Members of Their Rights.

To ensure notice is sufficiently disseminated to Settlement Class Members, Lead Plaintiffs propose a three-pronged approach, consisting of (1) individual notice "to all members who can be identified through reasonable effort," Fed. R. Civ. P. 23(c)(2)(B); (2) an extensive media and Internet-based notice campaign utilizing a combination of print media and online resources to target other Settlement Class Members, and (3) a universally accessible Settlement website.

*First*, Lead Plaintiffs' Counsel are coordinating with BNYM and its transfer agent, Computershare, to obtain information regarding registered holders, including a list of the identifiable registered holders of the BNYM ADRs listed in the Settlement Appendix who received cash distributions during a portion of the Settlement Class Period,[12] as well as the U.S. dollar amount each registered holder received from cash distributions per each ADR held and each registered holder's last known address. Stip. ¶ 22. Under Lead Plaintiffs' Counsel's direction, KCC—which has significant experience administering large class settlements, *see* Nirmul Decl. Ex. 2 (KCC résumé)—will mail notice individually to Registered Holder

---

[12] BNYM's transfer agent, Computershare, has informed Lead Plaintiffs' Counsel that it only maintains data on BNYM-sponsored ADRs dating back to January 1, 2012.

Settlement Class Members, in the form of a postcard (substantially in the form attached as Exhibit A-2 to the Stipulation ("Post-Card Notice")) containing a unique claim number and PIN, which will allow those recipients to access their holding and cash distribution information provided by Computershare through a portal available on the Settlement website.  Stip. ¶ 23; *see also, e.g.*, *Edwards v. N. Am. Power & Gas, LLC*, 2018 WL 3715273, at \*5 (D. Conn. Aug. 3, 2018) (approving notice by postcard directing class members to website).  In the event a Registered Holder Settlement Class Member's holding or cash distribution information is inaccurate or incomplete, the Settlement Class Member may supplement it through the Settlement website or by contacting the Claims Administrator.  The Post-Card Notice will also provide general information regarding the Settlement and Settlement Class Members' rights in connection with it, and direct recipients to the Settlement website for additional information, including a copy of the Notice.

*Second*, Lead Plaintiffs' Counsel will direct notice to Non-Registered Holder Settlement Class Members, whose information is not available to BNYM and its transfer agent, through a comprehensive multimedia notice program (the "Publication Notice Plan") described in the declaration of notice expert Jeanne Finegan, President and Chief Media Officer of HF Media, LLC (which Lead Plaintiffs request the Court appoint as Publication Notice Plan Administrator) accompanying this motion.  *See* Finegan Decl. ¶¶ 19-50.  Notice will be disseminated to those Settlement Class Members through (1) print media (e.g., publications in consumer magazines, nationally circulated newspapers, and investment newsletters) and online resources (e.g., banner ads on a variety of business, news, and investment websites; (2) search words and terms on Google AdWords; (3) social media outreach on Facebook, Instagram, and LinkedIn; and (4)

press releases.  *Id.*; *see also* proposed Summary Notice and Banner Ads attached as Exhibits A-3 and A-4, respectively, to the Stipulation).

*Third*, Lead Plaintiffs' Counsel will cause the Stipulation, as well as the Notice and the Notice Order, to be posted on a website dedicated to the Settlement and maintained by the Claims Administrator.

These efforts are directed to maximize the reach of notice under the circumstances of this case, and demonstrate Lead Plaintiffs' Counsel "acted reasonably in choosing the means likely to inform potential class members."  *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 166 (S.D.N.Y. 2007) (citing *Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988)).  Indeed, courts regularly approve notice programs providing for a mix of individual and media-based notifications.  *See, e.g.*, *In re Platinum & Palladium Commodities Litig.*, No. 10cv3617, 2014 WL 3500655, at *14 (S.D.N.Y. July 15, 2014) (approving publication notice as "the best practicable notice plan under the circumstances" where a "direct notice program [wa]s not feasible" for part of the settlement class); *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 123-24 (S.D.N.Y. 2001) (concluding "reasonable efforts were taken to notify all members of the class" where part of the class was covered by publication notice); *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 330 (C.D. Cal. 2016) (approving notice program that "utilize[d] a combination of individual notice to known class members in the form of Email Notices and Post-Card Notices and a schedule of publication notices in English and Spanish in magazines, on certain internet networks, on Facebook, and in a press release," and where notice expert "anticipate[d] that the notices w[ould] reach 75% of targeted potential class members, on

average, 2.3 times").[13]  This Court can thus comfortably exercise its "considerable discretion" to approve the notice program.  *Dornberger*, 203 F.R.D. at 123; *see also In re "Agent Orange" Prod. Liab. Litig. MDL No. 381*, 818 F.2d 145, 169 (2d Cir. 1987) (district court's determination with respect to reasonableness of efforts to identify class members "must be accepted unless clearly erroneous").

**B.    The Proposed Notice Clearly and Concisely Informs Settlement Class Members About the Settlement's Terms and Their Rights.**

The content of the Notice has been drafted to "be understood by the average class member," *Wal-Mart Stores*, 396 F.3d at 114, and informs Settlement Class Members of all pertinent aspects of the Settlement.  Specifically, it states—in plain, easily understood language—(1) the nature of the lawsuit; (2) the definition of the Settlement Class; (3) Settlement Class Members' claims and BNYM's asserted defenses; (4) that a Settlement Class Member may enter an appearance through an attorney if it so desires; (5) that the Court will exclude from the Settlement Class any Settlement Class Member who timely and validly requests exclusion; (6) the time and manner for requesting exclusion; (7) a description of the terms of the Settlement, including information about Settlement Class Members' right to obtain a copy of the Stipulation; (8) the right of any Settlement Class Member to object to any aspect of the Settlement; (9) the binding effect of the Settlement on Settlement Class Members who do not elect to be excluded; and (10) the date and time of the Final Approval Hearing.  *See* Fed. R. Civ. P. 23(c)(2)(B).[14]

---

[13] *See also In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) ("Because defendants do not have a list of potential class members, the court agrees with plaintiffs that notice by publication is the only reasonable method of informing class members of the pending class action and the . . . settlement.") (citing Manual for Complex Litigation § 21.311 (4th ed. 2004) ("Publication in magazines, newspapers, or trade journals may be necessary if class members are not identifiable after reasonable effort.")); *In re Toys "R" Us-Del., Inc.-Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 448-49 (C.D. Cal. 2014) (same, and collecting cases).

[14] Lead Plaintiffs have left blank the dates of the Final Approval Hearing in the proposed Notice so the Court may provide a date and time convenient to it upon entering the Notice Order.  Other dates in the Notice are tied to the date the Notice Order is entered or to the mailing of the Notice, and are thus likewise left blank.

The Notice also advises Settlement Class Members that Lead Plaintiffs' Counsel will apply to the Court for an award of up to 30% of the $72.5 million settlement amount, as well as reimbursement of Litigation Expenses of up to $1,750,000, which may include requests for Service Awards to Lead Plaintiffs not to collectively exceed $40,000, for the effort, time, and expense they devoted to the litigation. The Notice is thus "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). It should be approved.

## IV. THE COURT SHOULD ADOPT THE PROPOSED SCHEDULE FOR APPROVING THE SETTLEMENT

Lead Plaintiffs propose the following schedule for approving the Settlement:

- **Beginning no later than 40 business days after entry of the Notice Order**, the Claims Administrator will cause the Post-Card Notice to be mailed, by first-class mail, and will cause downloadable copies of the Notice and Claim Form (substantially in the forms as Exhibits A-1 and A-5 to the Stipulation) to be posted on the Settlement website.

- The Publication Notice Plan Administrator will commence the Publication Notice Plan beginning **no later than 10 calendar days after the Notice Order is entered**.

- Lead Plaintiffs' Counsel will file papers in support of final approval of the Settlement, the Plan of Allocation, and the motion for an award of attorneys' fees and reimbursement of Litigation Expenses (including any Service Awards requested) **no later than 49 calendar days before the Final Approval Hearing**.

- **No later than 7 calendar days before the Final Approval Hearing**, Lead Plaintiffs' Counsel will serve on BNYM's counsel, and file with the Court, affidavits or declarations showing that the mailing of the Post-Card Notice and posting of the Notice were done in accordance with the Notice Order, and report on the results of the Publication Notice Plan.

- Any individual or entity requesting exclusion from the Settlement Class must mail a written request, in the form prescribed by the Notice, to the address designated in the Notice, such that it is **received no later than 35 calendar days before the Final Approval Hearing**.

- Any Settlement Class Member who wishes to enter an appearance in the litigation (at its own expense) can do so by filing a notice of appearance with the Court and delivering the notice to Lead Plaintiffs' Counsel and BNYM's counsel, at the addresses provided in the Notice, such that it is **received no later than 35 calendar days before the Final Approval**

**Hearing**.

- Any Settlement Class Member who has not requested exclusion from the Settlement Class and who wishes to object to (i) the terms or conditions of the Settlement, or, if approved, the Order and Final Judgment to be entered in connection with the Settlement, (ii) the Plan of Allocation, or (iii) the attorneys' fees or reimbursement of Litigation Expenses (including any Service Awards requested) must, **no later than 35 calendar days before the Final Approval Hearing**, (i) serve on Lead Plaintiffs' Counsel and BNYM's counsel, by hand or overnight delivery to the addresses provided in the Notice, written objections (in the form prescribed by the Notice) setting forth the basis for the objections, as well as copies of any supporting papers and briefs; and (ii) file the objections, papers, and briefs (showing due proof of service on Lead Plaintiffs' Counsel and BNYM's counsel) with the Court.

- Lead Plaintiffs' Counsel will file any reply papers in further support of final approval of the Settlement, the Plan of Allocation, and the motion for an award of attorneys' fees and reimbursement of Litigation Expenses (including any Service Awards requested) **no later than 7 calendar days before the Final Approval Hearing**.

- The Final Approval Hearing will be held **no earlier than 135 days after the Notice Order is entered**.[15]

## CONCLUSION

Lead Plaintiffs request that the Court enter an order, substantially in the form of the Notice Order submitted with this motion, (1) directing that notice be provided to the Settlement Class in the forms and manner proposed by Lead Plaintiffs; (2) appointing Lead Plaintiffs as representatives of the proposed Settlement Class for purposes of disseminating notice, and appointing Lieff Cabraser and Kessler Topaz as counsel for the proposed Settlement Class; (3) authorizing the retention of KCC as Claims Administrator and HF Media, LLC as Publication Notice Plan Administrator; and (4) scheduling a Final Approval Hearing.

---

[15] This will, among other things, allow the parties to comply with requirements of the Class Action Fairness Act, 28 U.S.C. § 1715(b), as well as afford sufficient time for the Publication Notice Plan to be fully completed and for Settlement Class Members to object to or request exclusion from the Settlement Class.

Dated:  January 15, 2019

**KESSLER TOPAZ MELTZER
& CHECK, LLP**

By:  /s/ Sharan Nirmul

Joseph H. Meltzer
Sharan Nirmul
Daniel C. Mulveny
Ethan Barlieb
Jonathan F. Neumann
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
jmeltzer@ktmc.com
snirmul@ktmc.com
dmulveny@ktmc.com
ebarlieb@ktmc.com
jneumann@ktmc.com

*Interim Lead Counsel for Plaintiffs and the
Proposed Class*

**HACH ROSE SCHIRRIPA
& CHEVERIE, LLP**

By:   /s/ Frank R. Schirripa
      Frank R. Schirripa
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: (212) 213-8311
Facsimile: (212) 779-0028
fschirripa@hrsclaw.com

*Counsel for Plaintiff International Union of
Operating Engineers Local 138 Annuity
Fund*

Respectfully submitted,

**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**

By:  /s/ Daniel P. Chiplock

Daniel P. Chiplock
Daniel E. Seltz
Michael J. Miarmi
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592
dchiplock@lchb.com
dseltz@lchb.com
mmiarmi@lchb.com

Elizabeth J. Cabraser
Robert L. Lieff (*of counsel*)
275 Battery Street, 29th Floor
San Francisco, CA  94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
ecabraser@lchb.com
rlieff@lchb.com

*Interim Lead Counsel for Plaintiffs and the
Proposed Class*