UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: THE BANK OF NEW YORK MELLON ADR FX LITIGATION | 16-CV-00212-JPO-JLC |
| | ECF Case |
| This Document Relates to:<br><br>ALL ACTIONS | |

**MEMORANDUM OF LAW IN SUPPORT OF
LEAD PLAINTIFFS' UNOPPOSED
<u>MOTION FOR APPROVAL OF DISTRIBUTION PLAN</u>**

# TABLE OF CONTENTS

Page

| | | |
|---|---|---|
| I. | BACKGROUND ON THE SETTLEMENT | 1 |
| II. | THE NET SETTLEMENT FUND | 3 |
| III. | CLAIMS ADMINISTRATION | 4 |
| IV. | ADMINISTRATIVE DETERMINATIONS FOR CLAIMS | 6 |
| | A. Claims Recommended for Acceptance | 6 |
| | B. Claims Recommended for Rejection | 7 |
| V. | FEES AND EXPENSES OF THE CLAIMS ADMINISTRATOR | 7 |
| VI. | DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND | 8 |
| VII. | RELEASE OF CLAIMS | 10 |
| VIII. | RECORD RETENTION AND DESTRUCTION | 11 |
| IX. | CONCLUSION | 11 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Electrobras Sec. Litig.*,
     467 F. Supp. 3d 149 (S.D.N.Y. June 16, 2020) ............................................................................11

*Guevoura Fund Ltd. v. Sillerman*,
     2021 WL 21981 (S.D.N.Y. Jan. 4, 2021) ....................................................................................11

*In re Sunedison, Inc. Sec. Litig.*,
     2020 WL5038001 (S.D.N.Y. Aug. 26, 2020) .............................................................................11

*Wilson v. LSB Indus., Inc.*,
     2020 WL 5628039 (S.D.N.Y. Sept. 21, 2020) ............................................................................11

**Other Authorities**

Federal Rule of Civil Procedure 23(e) ..............................................................................................1

Plaintiffs David Feige, International Union of Operating Engineers Local 138 Annuity Fund, Annie L. Normand, Diana Carofano, and Chester County Employees Retirement Fund (collectively, "Lead Plaintiffs"), by and through their counsel Kessler Topaz Meltzer & Check, LLP and Lieff Cabraser Heimann & Bernstein, LLP ("Lead Plaintiffs' Counsel"), hereby submit this memorandum in support of their unopposed motion for an Order, pursuant to Federal Rule of Civil Procedure 23(e), approving the plan for distributing the Net Settlement Fund to eligible Settlement Class Members ("Distribution Plan") as set forth in the accompanying Declaration of Justin R. Hughes in Support of Lead Plaintiffs' Motion for Approval of Distribution Plan ("Hughes Declaration"), submitted on behalf of the Court-authorized Claims Administrator, Kurtzman Carson Consultants, LLC ("KCC").[1]

## I.   BACKGROUND ON THE SETTLEMENT

Lead Plaintiffs, on behalf of themselves and the Settlement Class, and The Bank of New York Mellon ("Defendant" or "BNYM" and, together with Lead Plaintiffs, the "Parties") entered into the Stipulation wherein the Parties agreed, in substance, that in exchange for consideration of $72,500,000 in cash, there would be a full and complete settlement of all Released Claims (as defined in ¶ 1(ll) of the Stipulation) against BNYM and the other Releasees (as defined in ¶ 1(pp) of the Stipulation).

By its Order Approving Issuance of Notice dated January 17, 2019 (ECF No. 149) ("Notice Order"), the Court directed that the Post-Card Notice be mailed by first-class mail to Registered Holder Settlement Class Members at the addresses set forth in the records of BNYM's transfer

---

[1]   Unless otherwise defined, all capitalized terms herein have the same meanings set forth in the accompanying Hughes Declaration or in the Stipulation and Agreement of Settlement dated January 15, 2019 (ECF No. 147-2) ("Stipulation").

agent.[2] The mailing was conducted in accordance with the Notice Order.[3] As set forth in the Hughes Declaration, KCC mailed approximately 473,000 Post-Card Notices to Registered Holder Settlement Class Members. Hughes Decl. ¶ 7. The Post-Card Notice informed Registered Holder Settlement Class Members that they did not need to take any additional action in order to be considered for payment; however they could amend or supplement their holding and distribution information provided by BNYM's transfer agent if they believed the information was incorrect or incomplete. *Id.*, ¶ 28.

Also pursuant to the Notice Order, the Court directed a publication notice campaign, consisting of banner and search advertisements and publications in various newspapers and magazines, in order to provide notice to Non-Registered Holder Settlement Class Members. The publication notice campaign provided basic information regarding the Settlement and directed Non-Registered Holder Settlement Class Members to www.BNYMARDFXSettlement.com for more information. Non-Registered Holder Settlement Class Members were advised that if they wished to be potentially eligible to receive a distribution from the Settlement, they were required to complete and submit a Claim to KCC postmarked, or submitted online, no later than August 15, 2019. *Id.*, ¶ 12. In addition, given the uniqueness of this administration – *e.g.*, a 20+ year Settlement Class Period, 342 eligible securities, and the requirement of providing cash distribution amounts

---

[2]  Each Post-Card Notice contained a unique Claim Number and PIN allowing Registered Holder Settlement Class Members to access their relevant holding and cash distribution information via a portal contained on the website www.BNYMADRFXSettlement.com.

[3]  *See also* Declaration of Lance Cavallo Regarding (A) Receipt and Processing of Registered Holder Data; (B) Mailing of the Post-Card Notice; (C) Establishment of the Telephone Hotline; (D) Establishment of the Settlement Websites; and (E) Report on Requests for Exclusion Received to Date, dated April 26, 2019 (ECF No. 155-1) and Supplemental Declaration of Lance Cavallo Regarding (A) Mailing of the Post-Card Notice; (B) Outreach to Third-Party Filers; (C) Update on Telephone Hotline and Settlement Websites; and (D) Report on Requests for Exclusion Received, dated June 10, 2019 (ECF No. 156-1).

(not purchases, sales, and holdings) for calculating losses, KCC, at the outset of the administration, sent emails to the largest and most common third-party filers ("Third-Party Filer") for which it had email addresses, advising the Third-Party Filers of the unique requirements for this Settlement and providing contact information in case they had any questions. *Id*., ¶¶ 24-25.

On June 17, 2019, the Court held a hearing to consider, among other things, whether the proposed Settlement should be granted final approval. By its Order and Final Judgment dated June 17, 2019 (ECF No. 162) ("Judgment"), the Court: (i) approved the Settlement provided for in the Stipulation, finding it fair, reasonable, and adequate to the Settlement Class; (ii) found the notice procedures to be proper; and (iii) dismissed with prejudice the claims asserted against Defendant in the Action. By its Order Approving Plan of Allocation of Net Settlement Fund dated June 17, 2019 (ECF No. 160), the Court approved Lead Plaintiffs' proposed plan for allocating the Settlement proceeds among eligible Settlement Class Members ("Plan of Allocation").

Pursuant to paragraphs 29 and 37 of the Stipulation, the Effective Date of the Settlement has occurred and the Net Settlement may be distributed to Authorized Recipients. Accordingly, pursuant to paragraph 29 of the Stipulation, Lead Plaintiffs respectfully request the Court to enter the [Proposed] Order Approving Distribution Plan ("Distribution Order").[4]

## II. THE NET SETTLEMENT FUND

As set forth in the Stipulation, the Settlement Amount (i.e., $72,500,000) has been deposited into the escrow account established by Lead Plaintiffs' Counsel ("Escrow Account"). In total, $746,623.38 in income has been earned on the Settlement Amount. In addition, the following amounts have been paid from the Escrow Account: (i) $5,946,231.06 in Notice and Administration

---

[4] The Court retained continuing and exclusive jurisdiction over, among other things, the disposition of the Settlement Fund and any motion to approve distribution of the Net Settlement Fund to Authorized Recipients. *See* Judgment, ¶ 15.

Costs;[5] (ii) $53,418.00 in Taxes; and (iii) $23,260,919.94 in Court-awarded attorneys' fees and expenses.[6] As of April 30, 2021, the balance of the Escrow Account was $43,986,054.38.

### III. CLAIMS ADMINISTRATION

All Claims received by KCC through November 24, 2020 have been fully processed in accordance with the Stipulation and the Court-approved Plan of Allocation set forth in the Notice. Hughes Decl., ¶ 4.[7] KCC has responded in a prompt manner to all inquiries regarding the Action, the Settlement, and the procedures for supplementing, completing, and submitting Claims, and has worked with Settlement Class Members throughout this administration to help them perfect their Claims. *See generally id*. ¶¶ 14, 30-39.

---

[5]  Of the total $5,946,231.06 in Notice and Administration Costs paid to date, $4,646,246.06 was paid to KCC (*see* Hughes Decl., ¶ 51); $418,500 was charged by BNYM's transfer agent, Computershare, for the production of the Registered Holder Settlement Class Member data; and $881,485.00 was paid to HF Media LLC (Heffler Claims Group) for the publication notice campaign conducted to provide notice to Non-Registered Holder Settlement Class Members. Under the terms of the Stipulation, Lead Plaintiffs' Counsel were permitted to pay from the Escrow Account actually incurred Notice and Administration Costs without further order of the Court or approval by Defendant. *See* Stipulation, ¶ 16; Notice Order, ¶ 21.

[6]  Pursuant to its Order Awarding Attorneys' Fees and Expenses and Service Awards to Lead Plaintiffs dated June 17, 2019 (ECF No. 161), the Court awarded 30% of the Settlement Fund as attorneys' fees (i.e., $21.75 million), plus $98,536.01 in interest on this amount, and $1,377,383.93 in reimbursement of Lead Plaintiffs' Counsel's Litigation Expenses. In addition, the Court awarded Lead Plaintiffs a total of $35,000 from the Settlement Fund to compensate them for their efforts on behalf of the Settlement Class.

[7]  In anticipation of completing the administration for the Settlement, November 24, 2020 was chosen as the cut-off date, after which no additional Claims from Non-Registered Holder Settlement Class Members would be accepted for processing or considered for inclusion in the Initial Distribution of the Net Settlement Fund. Hughes Decl., ¶ 12. This was done in order to allow KCC to finalize its reports in support of distribution and not delay a distribution to the Settlement Class. *Id*. KCC has continued to accept and process supplements to Claims from Registered Holder Settlement Class Members as well as responses to Notices of Rejection received after November 24, 2020. *Id*., ¶ 12, n.3 Claims received after November 24, 2020 or Claims adjusted after the finalization of the Hughes Declaration will be eligible to participate in subsequent distributions of the Net Settlement Fund subject to the provisions of ¶¶ 52(c) and 52(d) of the Distribution Plan set out in the Hughes Declaration.

As discussed in the Hughes Declaration, many of the Claims submitted in connection with the Settlement were initially deficient or ineligible for one or more reasons, including being incomplete, not signed, or not properly documented, which required follow-up work by KCC. *Id*. ¶¶ 30-39. For the Claims that were determined to be deficient or ineligible, KCC mailed a notice (or sent an email in the case of Electronic Claims) to the Claimant describing the defects in, or the ineligibility of, their Claim and advising what, if anything, was necessary to complete the Claim. *Id*. ¶¶ 31, 33.[8] These notices/emails advised Claimants that they were required to submit the appropriate information and/or documentary evidence to complete their Claim(s) within twenty (20) days from the date of the notice/email or their Claim(s) would be recommended for rejection to the extent the deficiency(ies) or condition(s) of ineligibility were not cured. *Id*.

In addition to advising of what was required to cure the Claim, the notices/emails advised Claimants of their right to request the Court's review of their Claim(s) if they contested KCC's administrative determination to reject their Claim(s) in whole or in part. *Id*. ¶ 35. During this administration, KCC did not receive a single request for Court review. *Id*.

Throughout this administration, KCC spent considerable time addressing deficient and ineligible Claims and assisting Claimants in curing the deficiencies in their Claims in order to be eligible to participate in the Settlement. *See generally id*. ¶¶ 30, 36-39. As a result of KCC's efforts, many Claimants who submitted Claims with curable deficiencies were able to properly complete their Claims and are now eligible to participate in the Settlement and receive a payment from the Net Settlement Fund.

---

[8]  Sample notices are attached as Exhibit A to the Hughes Declaration. Portions of Exhibit A have been redacted to protect Claimants' confidential personal information. *Id*., ¶ 31, n.5. For Electronic Claims, KCC emailed Claimants to notify them of any deficiencies in or the ineligibility of their Electronic Claims. These emails included spreadsheets containing the status information for *all* Claims submitted by the filer. *Id*., ¶ 33.

## IV. ADMINISTRATIVE DETERMINATIONS FOR CLAIMS

### A. Claims Recommended for Acceptance

As set forth in the Hughes Declaration, a total of 2,647,093 Claims were received and processed by KCC in connection with the Settlement through November 24, 2020. Hughes Decl., ¶¶ 12, 48. Of the total Claims received, 1,449,634 have been provisionally accepted by KCC. *Id*. ¶¶ 48, 50; *see also* Exs. B-1 and B-2 (listing all accepted Claims and their Recognized Claim amounts, in Claim number order). Of the 1,449,634 Claims being recommended for acceptance and approval by the Court, 332,468 Claims were submitted after the postmark deadline set forth in the Notice (*i.e.*, August 15, 2019), but were received by KCC on or before November 24, 2020. Hughes Decl., ¶ 40. Although these 332,468 Claims were submitted late, they were received while the processing of timely Claims was ongoing. Due to the amount of time needed to process the timely Claims for the Settlement, the processing of these late Claims did not delay the completion of the Claims administration process or the distribution of the Net Settlement Fund. Accordingly, Lead Plaintiffs' Counsel believe that it would be appropriate to allow these Late But Otherwise Eligible Claims to share in the Net Settlement Fund. *Id*. ¶ 41.[9]

The total Recognized Claims for the 1,449,634 Claims being recommended for acceptance is $365,307,188.76 ($359,091,621.19 for the Timely Eligible Claims listed on Exhibit B-1 to the Hughes Declaration and $6,215,567.57 for the Late But Otherwise Eligible Claims listed on Exhibit B-2 to the Hughes Declaration). *Id*. ¶ 50. Lead Plaintiffs' Counsel respectfully request that

---

[9] It is within the Court's discretion to allow late submitted claims. Pursuant to paragraph 10 of the Notice Order: "[*u*]*nless the Court orders otherwise*, all Claim Forms must be postmarked no later than one hundred fifty (150) calendar days after the Notice Date. Notwithstanding the foregoing, Lead Plaintiffs' Counsel may, at their discretion, accept for processing late Claims provided such acceptance does not delay the distribution of the Net Settlement Fund to Authorized Recipients." (emphasis added).

6

the Court approve KCC's administrative determinations with respect to the Claims being recommended for acceptance as listed on Exhibits B-1 and B-2 to the Hughes Declaration.

### B.     Claims Recommended for Rejection

Of the total Claims received by KCC through November 24, 2020, 1,197,459 Claims are being recommended for rejection. Hughes Decl., ¶ 48; *see also* Ex. B-3 to the Hughes Declaration (listing all Claims being recommended for rejection and the reasons for rejection, in Claim number order). The 1,197,459 Claims being recommended for rejection were determined to be ineligible for the following reasons: (i) 905,150 Claims did not result in a Recognized Claim pursuant to the Court-approved Plan of Allocation; (ii) 229,006 Claims were replaced (i.e., Claims re-submitted by Electronic Claim filers to correct issues with the data initially presented); (iii) 59,546 Claims did not fit the definition of the Settlement Class (i.e., these Claims did not reflect any eligible cash distributions during the Settlement Class Period); (iv) 2,569 Claims were duplicates of Claims previously submitted; (v) 1,024 Claims were withdrawn by the Claimant; and (vi) 164 Claims had uncured deficiencies. Hughes Decl., ¶ 48. Lead Plaintiffs' Counsel respectfully request that the Court approve KCC's administrative determinations with respect to the Claims being recommended for rejection as listed on Exhibit B-3 to the Hughes Declaration.

### V.     FEES AND EXPENSES OF THE CLAIMS ADMINISTRATOR

In accordance with KCC's agreement with Lead Plaintiffs' Counsel to act as the Claims Administrator for the Settlement, KCC was responsible for, among other things, disseminating notice of the Settlement to the Settlement Class, creating and maintaining websites and a toll-free telephone hotline dedicated to the Settlement, processing the voluminous amount of Claims for the Settlement, and allocating and distributing the Net Settlement Fund to Authorized Recipients.

As set forth in the accompanying Hughes Declaration, KCC has been paid a total of $4,646,246.06 from the Settlement Fund to date, in accordance with the Stipulation, for its work

in connection with the Settlement. Hughes Decl., ¶ 51. KCC has outstanding fees and expenses of $217,522.24 (Ex. C-1 to Hughes Declaration) and expects to incur $519,999.40 to conduct the Initial Distribution (Ex. C-2 to Hughes Declaration). *Id.*[10]

Lead Plaintiffs' Counsel respectfully request that the Court approve payment of KCC's outstanding fees and expenses as well as the fees and expenses KCC expects to incur to conduct the Initial Distribution and direct payment of this amount (i.e., $737,521.64) to KCC prior to the Initial Distribution of the Net Settlement Fund.

## VI.  DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND

The Net Settlement Fund is ready to be distributed at this time. Lead Plaintiffs' Counsel, therefore, respectfully request the Court enter an order approving KCC's determinations concerning the acceptance and rejection of the Claims received through November 24, 2020 and approving the Distribution Plan set forth in the Hughes Declaration. If KCC's administrative determinations are approved by the Court, each of the Authorized Recipients will receive their *pro rata* share of the Net Settlement Fund based on his, her, or its Recognized Claim calculated pursuant to the Plan of Allocation compared to the total Recognized Claims of all Authorized Recipients. Hughes Decl., ¶ 52(a)(i). As set forth in the Court-approved Plan of Allocation, if an Authorized Recipient's distribution amount calculates to less than $1.00 it will not be included in the calculation and no distribution will be made to such Authorized Recipient. *Id*. ¶ 52(a)(ii).

---

[10]    Should the estimated fees and expenses set forth in Exhibit C-2 exceed the actual cost to conduct the Initial Distribution, KCC shall return the excess to the Settlement Fund, and such returned amounts will be available for subsequent distributions of the Net Settlement Fund to Authorized Recipients. Hughes Decl., ¶ 51, n.12.

8

It is expected that not all of the checks sent to the Authorized Recipients will be cashed promptly and some of these checks will remain uncashed.[11] Following the Initial Distribution, and after Lead Plaintiffs' Counsel and KCC have made reasonable and diligent efforts to have Authorized Recipients negotiate their distribution checks, any balance remaining in the Net Settlement Fund (whether by reason of uncashed checks or otherwise) nine (9) months after the Initial Distribution, or as reasonably soon thereafter, will, if cost-effective to do so, be redistributed, after payment of any distribution amounts mistakenly omitted from the Initial Distribution and any additional administration fees and expenses incurred in administering the Settlement, including for conducting such re-distribution, to Authorized Recipients who cashed their Initial Distribution checks and who would receive at least $1.00 from such re-distribution. *Id*., ¶ 52(b).

Additional re-distributions to Authorized Recipients who have cashed their prior checks and who would receive at least $1.00 on such additional redistributions may occur thereafter if Lead Plaintiffs' Counsel, in consultation with KCC, determine that additional re-distributions, after payment of any additional fees and expenses incurred in administering the Settlement, including for such re-distributions, would be cost-effective. *Id*., ¶ 52(c). At such time as it is determined that further re-distribution of the funds remaining in the Net Settlement Fund is not cost-effective, Lead Plaintiffs' Counsel request that, in their discretion, they may process and pay any Claims received after November 24, 2020 or any Claims adjusted after the finalization of the Hughes Declaration, their distribution amounts or additional distribution amounts on a *pro rata*

---

[11]   In order to encourage Authorized Recipients to promptly deposit their payments, the Distribution Order sets forth that all Initial Distribution checks state: "CASH PROMPTLY. VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED 90 DAYS AFTER ISSUE DATE." Hughes Decl., ¶ 52(a)(iv).

9

basis, to the extent that funds are available, that would bring these Claimants into parity with other Authorized Recipients that have cashed all their prior distribution checks. *Id*. ¶¶ 52(c), 52(d). Otherwise, any remaining balance, after payment of any unpaid fees and expenses incurred in administering the Settlement, shall be contributed to a nonsectarian charitable organization, to be recommended by Lead Plaintiffs' Counsel and approved by the Court. *Id*. ¶ 52(c).

## VII.   RELEASE OF CLAIMS

In order to allow for the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amount allocated to Authorized Recipients, and to provide that all persons and entities involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement of this Action, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising from such involvement. Accordingly, Lead Plaintiffs' Counsel respectfully request this Court release and discharge all persons and entities who are involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement of this Action, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund from any and all claims arising out of such involvement, and, pursuant to the release terms of the Settlement, bar all Settlement Class Members, whether or not they are to receive payment from the Net Settlement Fund, from making any further claim against the Net Settlement Fund or the

parties released pursuant to the Settlement beyond the amount allocated to them by the Settlement as approved by the Court.[12]

## VIII. RECORD RETENTION AND DESTRUCTION

Lead Plaintiffs' Counsel respectfully request that the Court authorize KCC to destroy paper copies of Claims and all supporting documentation one (1) year after the final distribution date of the Net Settlement Fund and all electronic copies of the same three (3) years after the final distribution date of the Net Settlement Fund. Hughes Decl., ¶ 52(e).

## IX. CONCLUSION

Based on the foregoing, Lead Plaintiffs respectfully request that the Court approve their Motion for Approval of Distribution Plan and enter the [Proposed] Order Approving Distribution Plan.

Dated:  May 6, 2021                                        Respectfully submitted,

| **KESSLER TOPAZ MELTZER & CHECK, LLP** | **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP** |
|---|---|
| By: *S/Sharan Nirmul* <br> Sharan Nirmul <br> Joseph H. Meltzer <br> Ethan Barlieb <br> Jonathan F. Neumann <br> 280 King of Prussia Road | By: *S/Daniel P. Chiplock* <br> Daniel P. Chiplock <br> Daniel E. Seltz <br> Michael J. Miarmi <br> 250 Hudson Street, 8th Floor <br> New York, NY 10013 |

---

[12] Similar language has been routinely approved by courts in this Circuit in connection with the distribution of settlement proceeds. *See, e.g., Guevoura Fund Ltd. v. Sillerman*, 2021 WL 21981, at *2 (S.D.N.Y. Jan. 4, 2021) ("all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund are released and discharged from any and all claims arising out of such involvement, and all Class Members, whether or not they are to receive payment from the Net Settlement Fund are barred from making any further claim against the Net Settlement Fund or the released persons beyond the amount allocated to them pursuant to this Order"); *Wilson v. LSB Indus., Inc.*, 2020 WL 5628039, at *2 (S.D.N.Y. Sept. 21, 2020) (same); *In re Sunedison, Inc. Sec. Litig.*, 2020 WL5038001, at *3 (S.D.N.Y. Aug. 26, 2020) (same); *In re Electrobras Sec. Litig.*, 467 F. Supp. 3d 149, 151 (S.D.N.Y. June 16, 2020) (same).

11

Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
jmeltzer@ktmc.com
snirmul@ktmc.com
ebarlieb@ktmc.com
jneumann@ktmc.com

*Lead Counsel for Lead Plaintiffs and the Settlement Class*

Telephone: (212) 355-9500
Facsimile: (212) 355-9592
dchiplock@lchb.com
dseltz@lchb.com
mmiarmi@lchb.com

Elizabeth J. Cabraser
Robert L. Lieff (*of counsel*)
275 Battery Street, 29th Floor
San Francisco, CA  94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
ecabraser@lchb.com
rlieff@lchb.com

*Lead Counsel for Lead Plaintiffs and the Settlement Class*